# WALTER WILLIAMS

*v.*

# JOHN H. SCHMIDT.

1. ARBITRATION—*what constitutes.* Where parties agree to settle certain differences between them by submission of the matters in dispute to four persons, two to be selected by each party, the action of two persons selected by one of the parties will not be regarded as an arbitration under such agreement, so as to be binding on the other party.

2. SAME—*notice to parties.* But even where the body of arbitrators is organized according to the agreement of the parties, it is essential to the regularity and validity of their action that such notice be given the parties as will afford them an opportunity to be heard.

3. RECOUPMENT—*when allowable.* In an action by a lessee against the lessor, it appeared the subject of the lease was a coal mine, and the lessor, under a provision in the lease, had resumed possession of the leased property before the end of the term, for non-payment of rent, and because the mine was not being worked to his satisfaction. The lessee sued to recover

for certain mining tools and other property belonging to him, which were taken by the lessor when he terminated the lease, and also for the erection of a blacksmith shop and other buildings: *Held*, the defendant in the action, the lessor, could recoup in this suit such damages as he had sustained by reason of the mine having been unskillfully worked by the lessee, in violation of the covenants in the lease, it being regarded that the subject matter of the plaintiff's claim arose out of the lease.

4. Nor would this right of recoupment, as against the plaintiff, who was the sole lessee, be affected by the fact, that after taking the lease, the lessee had associated others with him in working the mine, as he was liable, under his covenants, for injury to the property, whether occasioned by himself or by those connected with him in the business.

APPEAL from the Circuit Court of St. Clair county; the Hon. JOSEPH GILLESPIE, Judge, presiding.

The opinion states the case.

Mr. WILLIAM H. UNDERWOOD and Mr. L. H. HITE, for the appellant.

Messrs. KASE & WILDERMAN, for the appellee.

Mr. JUSTICE WALKER delivered the opinion of the Court:

This was an action of assumpsit, brought by appellee, in the St. Clair circuit court, against appellant, to recover $1200, claimed to be due to appellee. The declaration contained the common counts, to which the general issue was filed, and notice that special matter would be given in evidence, in which it was claimed that appellee owed appellant $3000. Issue was joined. A trial was had by jury, resulting in a verdict in favor of appellee for $700, upon which a judgment was rendered.

It appears that appellee leased a coal mine from appellant, in 1868, for the term of ten years. Appellee entered into possession and operated the mine for about four months, but failing to pay rent, and not working the mine to the satisfaction

of appellant, he declared appellee's lease at an end, and resumed possession in pursuance to a stipulation contained in the lease. Afterwards, differences arose in regard to a settlement between the parties, appellant claiming that he was entitled to pay for rent of the mine, freights paid by him on coal shipped by appellee, for tools and implements for mining turned over with the mine, and to be returned by the terms of the lease, and a large sum for damages to the mine, caused by working it in an unskillful manner, and in permitting it to get out of repair. Appellee claimed pay for the tools and mining implements taken by appellant when he took possession of the mine under the forfeiture, and for some horses and mules employed in the mine; also, for the erection of a blacksmith shop and other buildings. It appears that the parties agreed to arbitrate these differences, and that each should select two men, and the four thus selected should hear and determine the controversy.

Afterwards, appellee came to the mine with two men whom he had selected, and, after getting permission, they went into the same, and the two examined it, and such articles of personal property as appellee pointed out to them, and fixed a value upon the same, and furnished appellee a list. And it is now contended by appellee that this was an arbitration, and that appellant is bound by the acts of the two men thus selected by appellee. On the other hand, appellant insists that it was not an arbitration, and that he is not bound by their acts, as the arbitration was not regularly constituted, and that the men thus selected went outside of the agreement to arbitrate, and passed upon claims and fixed prices upon property not embraced in the submission.

From the evidence contained in this record, we are unable to see that there was an arbitration. It appears that but two persons were selected, and they by appellee, when the evidence of appellant is, that it was agreed that there should be four, two selected by each party, and this evidence stands uncontradicted. If this is true, there can be no pretense that the body

was constituted in the mode agreed upon by the parties, and to be binding, it should have been in accordance with this agreement. But even if it was conceded that the body was regularly organized, the whole subsequent proceeding seems to have been irregular. It nowhere appears that appellant was notified of the time or place where the arbitration would take place. No opportunity was afforded him to produce witnesses or to be heard in support of his claim. The whole proceeding seems to have been *ex parte* in the interest of appellee, and if so, it would be unjust to compel appellant to abide by the determination thus made, unless he afterwards assented to or adopted the action of the persons claiming to act as arbitrators.

Even the persons claimed to have been arbitrators, say they do not know whether the property which they valued belonged to appellee, but they appraised such as he pointed out to them, and this was in the absence of appellant. There is no evidence that it was owned by appellee, except the bill of sale from Edwards, and it was then in the possession of appellant.

From this view of the case, it is apparent that the first instruction given for appellee was wrong. By it, the court informed the jury, that if the jury believed there was an agreement to arbitrate the differences between the parties, and in pursuance to the agreement two men were selected, and they proceeded to value the property, and struck the difference between the parties, and appellant agreed to pay appellee the difference found to be due him after deducting freight paid and bank rent, they should find according to the award of the arbitrators. We have seen the evidence fails to disclose that there was a valid and binding award, nor does the instruction require the jury to believe there was. The instruction requires the jury to hold appellant bound by the award, no matter how made, if the men claimed to be arbitrators only acted and struck the balance, no matter when or in what manner, if appellant said he would pay, after deducting rent and freights. This instruction was calculated to mislead, as it cut off all evidence offered by appellant to show that the arbitrators had exceeded their authority.

If it was designed to inform the jury, that if appellant agreed to pay the balance struck after deducting his account, or particular items of the same, then the instruction should have been so framed and given. But the instruction, as given, is based upon the idea that there had been a binding award, and that it cut off all other claims.

Appellant next insists that the court below erred in instructing the jury that if the damage to the mine was done by Schmidt & Co. such damage could not be recouped in this action. This question must be controlled by the contract of the parties, as manifested in the lease. It, when examined, shows that it was executed by appellant to appellee, individually, and not to him and others, or to his firm. He alone is liable, under it, for damages growing out of the breach of its covenants. Under the rule adopted by this court, that damages growing out of the breach of the contract may be recouped against a recovery under the agreement, no reason is perceived why appellant may not recoup any damages he may have sustained by reason of a failure to perform his covenants contained in the lease. This suit grows out of the lease, and appellant may set up the damages he has sustained by reason of the breach of the terms of the lease by appellee, to prevent a recovery, either in whole or in part. The damages are claimed as growing out of the matter in litigation in this suit. They do not grow out of a separate and distinct agreement or transaction, which would prevent them from being recouped. After appellee rented the mine, it did not matter that he associated others with him to operate it, as he was liable for all damages growing out of his or their breach of the terms of the lease. In this view of the case, the second instruction given for appellee was erroneous, and should not have been given.

The judgment of the court below is reversed and the cause remanded.

*Judgment reversed.*